## Gay v. McDonald, et al.

(Decided May 3, 1911.)

### Appeal from Fayette Circuit Court.

1. Action—Finding of Chancellor—Plaintiff was employed by defendant to purchase grass seed. He brought this action to recover commissions, money expended at the instance and request of defendant and for the reasonable value of a certain quantity of grass seed sold by him and delivered to and accepted by defendant. The case was transferred to equity and the chancellor found for plaintiff. Held, upon an examination of the evidence that it fully supports the finding of the chancellor.

2. Pleading—Failure of Proof—Where a party employed to purchase grass seed for another does purchase a large quantity of seed, and pays for it with the latter's money, but at the same time purchases seed in small quantities and from numerous parties, and pays for same himself, and then consigns the seed to the third party as so much seed sold and delivered, and the other party is acquainted with the facts and accepts the seed and fails to pay for them, and the former then brings suit on a quantum valabat, for so much seed sold and delivered, the party accepting the seed will not be relieved of liability on the ground of failure of proof, because, technically considered, the facts tend to show a case of money expended at his instance and request rather than a sale and delivery.

SHELBY & SHELBY for appellant.

J. EMORY ALLEN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY—COMMISSIONER—Affirming.

At the time of the transaction out of which this litigation arose, appellant, David S. Gay, was a wholesale grain and seed dealer and resided in Winchester, Kentucky. Appellee, Nathan G. McDonald, was a merchant, and conducted a general merchandise store at Avon, Kentucky, a station on the L. & E. Railroad about midway between Lexington and Winchester. Appellee also dealt in grass seed. Sometimes he would buy for himself; at other times he would buy for others on commission.

In the spring of 1903 McDonald and Gay entered into a verbal contract by which McDonald was to buy grass seed on commission for Gay during the season of that year. While there was no direct agreement as to the amount of the commission, it is admitted that one cent a bushel was a reasonable commission. Gay placed to McDonald's credit in the Clark County National Bank the sum of $6,181.81. This sum McDonald checked out to himself and to persons from whom he claims to have bought seed.

McDonald brought this action to recover a certain balance claimed to be due. It appears from his amended petition that this balance is composed of the following items:

$145, being a commission of one cent a bushel on 14,500 bushels of seed;

$368, expense of curing 14,500 bushels of seed which Gay promised to pay, but failed to do so;

$437.64, for 1,042 bushels of hand-stripped seed which McDonald sold and delivered to Gay, and for which Gay failed to pay; and

$52.27, cash paid for seed at Gay's special instance and request, and which the latter had failed to pay. This item represents a check given by McDonald on Gay's special deposit to C. M. Marshall for $50, which was protested. The protest fee amounted to $2.27. The check was not paid, and McDonald made the amount good.

These several items aggregate $1,002.91. They are credited by a cash payment of $650. Judgment was asked for the balance of $352.91, with interest from January 1, 1904. Upon submission of the case the court did not allow any commission on the 1,042 bushels of hand-stripped seed which McDonald claims to have sold Gay, nor did the court allow the item of $2.27, protest fee on

the C. M. Marshall check. Judgment was given for the balance of McDonald's claim, amounting to $340, with interest from the date of filing the suit on February 8, 1904, until paid, and costs. From this judgment Gay appeals.

In addition to joining issue on the various items hereinbefore referred to, Gay asserted a counterclaim for damages, alleging that McDonald bought more seed than he was authorized to buy; that the seed bought was an inferior and unmerchantable quality, and that by reason of McDonald's negligence and carelessness in curing the grass seed which he bought, the seed was injured and damaged. Upon the question of the number of bushels of seed purchased, McDonald filed with his deposition a complete statement showing the names of the persons from whom the purchases were made and the number of pounds bought from each. This exhibit has attached thereto the original pages of the book in which the original entries were made. His clerk, R. H. Hughes, corroborates McDonald's statements in regard to the number of bushels of seed purchased. A number of the persons from whom the purchases were made also gave their depositions. McDonald paid for all the seed so purchased by checks drawn on the Clark County National Bank, where Gay had placed funds to his credit. Gay kept these checks, and it would have been an easy matter for him to ascertain the number of bushels purchased from each person by dividing the amount of the check by the price paid per bushel. Being in possession of the names of the purchasers, Gay could have shown any mistake in McDonald's statement. There is, however, no direct evidence of any such mistake. The man who weighed seed at Gay's warehouse claims that only 8,817 bushels of cured seed were delivered; McDonald places the amount at 9,697. If McDonald's statement be correct, then the shrinkage amounted to about 33 1-3 per cent. If Gay's contention be correct, then the shrinkage was a little less than 40 per cent. Because two or three respectable witnesses say that, even in the worst kind of a season the shrinkage between green and cured seed should not exceed 33 1-3 per cent., we are asked to hold that McDonald did not, as a matter of fact, buy the quantity of seed which he claims to have bought. Other reputable witnesses, however, placed the shrinkage as

high as 40 and 45 per cent. during a very wet season; and the evidence shows that, during the grass seed season of 1903, it rained nearly all the time. In view of the discrepancy in the evidence as to the quantity of shrinkage, we are not inclined to hold that the shrinkage in this case was so great as to show that McDonald did not furnish the quantity he claims to have furnished; especially, when we take into consideration the fact that all the direct evidence in the case tends to support his statement.

The item of $368, for expense incurred in curing the seed, is fully proved. The evidence shows that, in order to preserve and properly cure grass seed, it is necessary to stir it in the air three or four times daily, and that McDonald employed laborers to do this work, and paid them therefor. He files with his deposition the original pages of the book in which the record of this expense was kept, showing the name of each laborer, the amount of money paid him, and the date of the payment. Several of these laborers testified. McDonald's clerk corroborates him on this question, and Gay admits he was to pay the expense of curing the seed.

We also conclude that the evidence fully supports the finding of the chancellor upon the item of $52.27, claimed to have been paid by McDonald because of the protesting of the C. M. Marshall check, and the item of 1,042 bushels of grass seed which McDonald claims to have sold and delivered to Gay at the price of forty-two cents per bushel.

The question of McDonald's authority to purchase only 2,000 bushels of grass seed may be disposed of by saying that Gay, notwithstanding he claims to have authorized the purchase of only that amount, accepted and paid for nearly all the seed which McDonald purchased, and he is not, therefore, in position to complain of the fact that McDonald, in purchasing anything in excess of 2,000 bushels, exceeded his authority.

The evidence before us does not support appellant's counterclaim based upon the theory that the seed purchased was of inferior and unmerchantable quality, and that McDonald was negligent and careless in properly curing the seed. Quite a number of reputable farmers from whom the purchases were made testified that the seed purchased from them was of first-class quality and was not stripped when it was too green. Only one or two

loads of green seed were bought, and these were heavily docked by McDonald. One load was docked so heavily that it reduced the price of the seed to about twenty cents per bushel, or half the regular price.

Upon the question of negligence in curing the seed, Gay's evidence is to the effect that it is better to cure seed in a barn or warehouse, though he admits he never followed this practice. He claims, and supports his contention by the testimony of two or three negroes, that the lot where McDonald cured his seed was not well-adapted for the purpose, and that McDonald had the seed stirred when the top of the rick was too wet, instead of waiting for the sun to dry the seed. McDonald's evidence, however, shows that the lot was well adapted for the purpose, and that it rained so frequently that it was practically an impossibility to wait until the rick was dry; and in order to keep the seed from rotting, it was absolutely necessary to resort to the method adopted by him. His position in this matter is supported by the evidence of several expert seed men, and, upon a careful consideration of all the evidence, we fail to see wherein he was negligent in the method he adopted for stirring and curing the seed.

But, appellant's chief contention upon this appeal is based upon a question of pleading. It is insisted that, although appellee declared upon a quantum valebat for $437.64 for 1,042 bushels of hand-stripped seed sold and delivered to appellant, McDonald's own evidence shows that no such sale was made, but the amount claimed simply represents money expended in the purchase of grass seed for Gay and at his instance and request, and that, therefore, there is a failure of proof as to this item. While McDonald does say he was acting as agent for Gay in purchasing seed, a careful reading of his deposition shows that he made this statement with reference to the 14,500 bushels which he paid for with money deposited to his credit by Gay. It is evident from the character of the transaction that the hand-stripped seed stands upon a different basis. It appears to have been purchased by McDonald in small quantities, and chiefly from colored persons living in the neighborhood. Instead of drawing checks upon funds to his credit in the Winchester bank, McDonald, himself, paid for the seed thus obtained out of his own funds. In some instances the payments were made in cash, while in others the sel-

lers took out in trade the amount due them. Instead of treating these purchases as made for Gay, McDonald treated them as purchases made for his own account. While McDonald kept an accurate record of the number of pounds of hand-stripped seed purchased, he did not keep any record of the amount of money he paid for it. In rendering his account against Gay, he rendered it not for so much money paid out for grass seed, but for so much grass seed sold and delivered. The proof further shows that Gay accepted the seed with a full knowledge of all the facts, and that the price charged of forty-two cents a bushel is reasonable. From these facts, we conclude that the parties regarded the transaction as a sale; and, as the seed was furnished to, and received by Gay, and not paid for, we are not disposed to hold that Gay should be relieved from liability on the ground of failure of proof because, technically considered, the facts tend to show a case of money expended for his benefit and at his instance and request, rather than a sale and delivery.

Judgment affirmed.